FILED - KZ
June 6, 2025 12:15 PM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
ems   Scanned by ES / 6/6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,        )
            Plaintiff,        )
                           )   CRIMINIAL NO.1:17-CR-271-5
v.                              )   CIVIL No.1:21-CV-00222
                           )
MICHEAL DONNELL NEELEY,          )
           Defendant.

1:25-cv-00635
Hon. Jane M. Beckering

**PETITION MOVING THE COURT TO CORRECT THE UNLAWFUL ENHANCED DRUG SENTENCE. THIS IS AN ACTUAL AND FACTUAL INNOCENT CLAIM**

A.

COMES NOW Defendant Micheal Donnell Neeley, a <u>pro se</u> prisoner, moving the Court to correct his unconstitutional enhanced sentence.

B.

**BACKGROUND AND CRUCIAL FACTS**

Under the Constitution of the United States Defendant Micheal Donnell Needley, is a United States citizen, and he is one of "the People."

Prior to the Government's July 21, 2021 arrest of Defendant, and during the Government's prosecution of Defendant, and the district court's March 15, 2023 sentencing, Defendant **had a secured "individual right"** to keep and bear arms for family and home and self-defense. Further, that secured "individual right," is included in, and protected by the Constitution's due process clauses. Defendant's secured "individual right" to possess a legal firearm, has never been constitutionally abrogated by any judicial due process hearing.

On May 17, 2018, after four days of trial a federal jury convicted Michael Donnell Neeley, 39, of Kalamazoo, Michigan, of conspiring to distribute methamphetamine. Michael Donnell Neeley was the only charged co-conspirator to go to trial.

1

Michael Donnell Neeley was sentenced by U.S. District Judge Janet T. Neff to 235 months in prison for conspiring to participate in a methamphetamine distribution. In addition to his prison term, the court sentenced Neeley five years of supervised release ordered him to pay a fine of $3,000.

At sentencing, Judge Neff on her own determined that Neeley merited an increased sentence **for possessing a firearm during the conspiracy.** Thus, showing the sentencing judge's prejudice against Defendant.

### C.

### THIS COURT HAS JURISDICTION OVER THIS CASE

This case has several prejudicial constitutional errors which caused Defendant to receive an unlawfully inflated prison sentence by the Government.

Defendant brings this action pursuant to his secured Constitutional protected rights guaranteed him by the First, Second and Fifth Amendments, and under Article III, § 2, and Article VI of the United States Constitution. See Marbury v. Madison, 5 U.S. 137 163 (1803).

This case presents federal questions within this Court's jurisdiction under Article III, § 2 of the United States Constitution and art. I § 9, cl. 2 (Suspension Clause). This Court has further jurisdiction under 28 U.S.C. § 2255, 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1651 (All Writs Act), and 28 USC §§ 2201, 2202 (declaratory relief). Further jurisdiction is under The First Amendment to the United States Constitution ( the right to petition the government for redress of grievances). See also Marbury 5 U.S. at 163.

The First Amendment to the United States Constitution prevents the Government from making laws that regulate, or that prohibits ... the right to petition the government for redress of grievances. It was adopted on December 15, 1791, as one of the ten amendments that constitute the Bill of Rights.

Petitions were a more powerful tool in the revolutionary era than they are today, as they were the only direct means of "redressing ... grievances" against the government; the idea of pursuing lawsuits

2

against unconstitutional legislation was not feasible in 1789. This being the case, the right to petition was essential to the integrity of the United States. Without it, disgruntled citizens would have no recourse but armed revolution.

The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws whenever he receives an injury. One of the first duties of government is to afford that protection. In Great Britain, the King himself is sued in the respectful form of a petition, and he never fails to comply with the judgment of his court. Marbury v. Madison, 5 U.S. 137 163 (1803). Here, Petitioner claims the protections of law of the Constitution of the United States, "the right to keep and bear arms, shall not be infringed," Second Amendment, and "the right to due process of law," Fifth Amendment.

Must a term of imprisonment be set in stone, no matter what happens after it is imposed? Should a court be able to reduce a sentence when unforeseeable tragedies change its consequences? What if the defendant's children are effectively orphaned by the death of their other parent? What if a debilitating injury makes it impossible for the defendant to care for him or herself in prison, or recidivate outside of it? What if a terminal diagnosis turns a brief term of imprisonment for a minor crime into a life sentence? What if a global pandemic poses a mortal risk to an immunocompromised inmate who nobody intended to die in jail? When should a court be able to consider such events and revise a previously imposed sentence accordingly? How difficult should it be for a defendant to request this type of relief? U.S. v. Osorto, 445 F. Supp. 3d 103, 104 (N.D. Cal. 2020). Our Forefathers and Congress has provided answers to these questions, in the First Amendment, and under Article III, § 2, and Article VI of the United States Constitution. See also 28 U.S.C. § 1331, 28 U.S.C. §1651, and 28 USC § 2202 §2202.

"It is the duty of courts to be watchful for the constitutional rights of the Citizen, and against any stealthy encroachments by the government." Boyd v. United States, 116 U.S. 616, 635 (1886); Davis v. Passman, 442 U.S. 228, 242 (1979). See also Article Six clauses 2 and 3 of the Constitution of the United States.

3

Defendant filed his petition **pro se**. "The court is to construe a prisoner's pro se pleading liberally." United States v. Sotomayor, 146 F. Supp. 3d 667, 668 (E.D. Pa. 2015) (citations omitted).

**Therefore,** this Court has jurisdiction over the issues presented to this Court.

### D.

### ARGUMENT

### I.

**Prior to the Government's prosecution Defendant's secured "individual right" to keep and bear arms, had not been constitutionally abrogated in a judicial due process hearing with a finding that Defendant is a danger to his community and or to another person, by possessing a legal firearm for self-defense.**

**Controversies to which the United States is a Party**

**The Federal Government's claim** that upon a Citizen's conviction of one of its laws with a sentence exceeding one year, that Citizen's secured individual right to keep and bear a legal firearm for lawful home and family and self-defense, automatically evaporates into thin air.

**Defendant contends that is a false statement by the Government.** Defendant asserts that the Government uses that falsehood as its authority to prohibit thousands of Citizens, some cases for life, from possessing a legal firearm for lawful home and family and self-defense. The Government also used that lie as a constitutional authority to punish Citizens by imprisonment, for a term up to life in prison in some cases for simply possession of a legal firearm. Such falsehood by the Government violates the Second Amendment, and the due process clause of the Fifth Amendment.

### II.

Defendant challenges District Judge Janet T. Neff's 235-month drug sentence, conspiracy to distribute and to possess methamphetamine. District Judge Janet T. Neff's 235-month drug sentence was greatly enhanced because Judge Neff's animosity towards Defendant because it was alleged that he may have possessed a firearm some time during the conspiracy.

4

Defendant challenges District Judge Janet T. Neff's enhanced 235-month drug sentence based on the fact that it was alleged that Defendant may have possessed a firearm during the alleged drug conspiracy. Such sentence enhancement for simply possession of a firearm, is an unconstitutional infringement on Defendant's Second Amendment secured right to possess a firearm, and his right to due process under the Fifth Amendment. Defendant's secured "individual right" to possess a legal firearm, is included in, and is protected by the Due Process Clause of the Fifth Amendment. See; Planned Parenthood v. Casey, 505 U.S. 833, 847-848 (1992); Moore v. East Cleveland, 431 U.S. 494, 502 (1977); Poe v. Ullman, 367 U.S. 497, 541-543 (1961). Thus, Judge Janet T. Neff's enhanced sentence for possession of a firearm, is an unconstitutional infringement on Defendant's secured "individual right" to possess a legal firearm. That right is included in, and is protected by the Due Process Clause of the Fifth Amendment. Casey, 505 U.S. at , 847-848; Moore, 431 U.S. at, 502; Poe 367 U.S. at, 541-543. Therefore, it is unconstitutional, both facially and as applied to Defendant, because the prohibitions of the Second Amendment and the Due Process Clause of the Fifth Amendment bars, stands as a stop, against Judge Janet T. Neff's Constitutional power to enhanced a sentence when it is an unconstitutional infringement on Defendant's Second Amendment secured right to possess a firearm, and his right to due process under the Fifth Amendment.

Prior to and during the Government's prosecution, Defendant's secured "individual right" to keep and bear arms, had not been constitutionally abrogated in a judicial due process hearing, with a finding that Defendant is a danger to his community and or to another person, by possessing a legal firearm for self-defense. Thus, prior to and during the Government's prosecution of Defendant, the prohibitions of the Second Amendment and the Due Process Clause of the Fifth Amendment, barred Judge Janet T. Neff from greatly enhancing Defendant's sentence based on the grounds that he may have possessed a firearm. That enhanced sentence was an unconstitutional infringement on

5

Defendant's Second Amendment secured right to possess a firearm, and his right to due process under the Fifth Amendment.

Further, the district court plainly erred in applying the two-level U.S.S.G. § 2D1.1(b)(1) specific offense characteristic for possessing a dangerous weapon in calculating his guidelines range.

### III.

The Supreme Court in Scott v. Sandford declared: "Citizens have the right to keep and carry arms wherever they went. Nor can Congress deny to the people the right to keep and bear arms." Dred Scott v. Sandford, 60 U.S. 393, 417-420, 450-451(1856).

In Dist. of Columbia v. Heller, the United States Supreme Court sustained a Second Amendment challenge to a District of Columbia law that prohibited private possession of handguns in the home. 554 U.S. 570, 635, 128 S. Ct. 2783, 2821-22 (2008). The Court noted that, "on the basis of both text and history," the Second Amendment conferred an individual right to keep and bear arms. Id. at 595, 128 S. Ct. at 2799. It held that citizens have a Second Amendment right to possess handguns in the home for the purpose of immediate self-defense. Id. at 635-36, 128 S. Ct. at 2821-22.

In N.Y. State Rifle & Pistol Ass'n. Inc. v. Bruen, which involved a challenge to New York's gun-licensing regime. 597 U.S. 1, 11, 142 S. Ct. 2111, 2122 (2022). "The Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." Id. at 10-11, 142 S. Ct. at 2122. Bruen reiterated that "Heller's text-and-history standard" is the correct test for determining the constitutionality of gun restrictions. See id. at 39, 142 S. Ct. at 2138.

6

IV.

Defendant alleges that the Constitution of the United States guarantees him a secured "individual right" to keep and bear arms; and that right does not automatically evaporate because of a felony conviction, because that secured right is included in, and protected by the Due Process Clause of the Constitution of the United States. See Albright v. Oliver, 510 U.S. 266, 306-307 (1994); Planned Parenthood v. Casey, 505 U.S. 833, 847-848 (1992); Moore v. East Cleveland, 431 U.S. 494, 502 (1977); Poe v. Ullman, 367 U.S. 497, 541-543 (1961).

V.

**The district court [was] precluded from applying a weapons enhancement against Defendant**

"[I]f a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense." Id., comment. (n.4). "[W]hen a defendant is convicted of an underlying offense here, conspiring to distribute methamphetamine, the defendant's possession of a weapon can-not be used to enhance the level of the underlying offense." United States v. Diaz, 248 F.3d 1065, 1107 (11th Cir. 2001) (involving the issue of whether a defendant could be held accountable under § 2D1.1(b)(1) for a co-conspirator's possession of the firearm as relevant conduct); see also United States v. Timmons, 283 F.3d 1246, 1254 (11th Cir. 2002).

Because Defendant was convicted and sentenced for conspiring to distribute methamphetamine, the district court [was] precluded from applying a weapons enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) to the underlying drug charges"). This "prevent[s] 'double counting' for firearms use[d] in any one criminal event." United States v. Pringle, 350 F.3d 1172, 1180 (11th Cir. 2003).

VI.

**Defendant is sentenced under an incorrect Guide lines range**

Michael Donnell Neeley was the only charged co-conspirator to go to trial. At sentencing, Judge

7

Neff on her own, determined that Defendant Neeley merited an increased sentence for possessing a firearm during the conspiracy. Thus, showing the sentencing judge's prejudice against Defendant.

"When a defendant is sentenced under an incorrect Guide lines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different out-come absent the error." Molina-Martinez v. United States, 578 U.S. 189, 198, 136 S. Ct. 1338, 1345 (2016).

The record is silent as to what district court Judge Neff on her own might have done had the court known, and considered, that the Constitution of the United States guarantees Defendant a secured "individual right" to keep and bear arms; and that right does not automatically evaporate because of a felony conviction, because that secured right is included in, and protected by the Due Process Clause of the Constitution of the United States. See Albright 510 U.S. at , 306-307; Casey, 505 U.S. at, 847-848; Moore, 431 U.S. at, 502; Poe, 367 U.S. at, 541-54. When the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." Molina-Martinez. 578 U.S. at 200-01, 136 S. Ct. at 1346-47.

## VII.

**Defendant received a harsher sentence than the district court may have imposed had it been aware of the correctly calculated guideline**

The record demonstrates that the district court plainly erred in applying the two-level § 2D1.1(b)(1) specific offense characteristic enhancement for possessing a dangerous weapon in calculating Defendant's guidelines range. See United States v. Ramirez-Flores, 743 F.3d 816, 821 (11th Cir. 2014) (when a party fails to object at sentencing, appellate court reviews for plain error only). The district court sentenced Lopez for violating § 924(c)(1)(A)(i), and a defendant's conviction for possession of a weapon cannot be used to enhance the level of the underlying offense. See Diaz; Timmons. Further, the record is silent as to what sentence the district court might have imposed if it had considered the correct advisory guidelines range. Thus, there was an error, that was plain and that affected Defendant's substantial rights.

8

The error also seriously affected the fairness of the judicial proceedings because Defendant received a harsher sentence than the district court may have imposed had it been aware of the correctly calculated guideline. Thus, the Court must vacate Defendant's sentence and remand the case for a new sentencing hearing.

### E.

### DEFENDANT DID NOT CONSTITUTIONALLY FOREIT HIS SECURED SECOND AMENDMENT RIGHTS BECAUSE OF HIS PRIOR CONVICTION; THAT RIGHT DOES NOT EVAPORATE UPON A FELON CONVICTION

#### I

The Government opines that due to Defendant's prior conviction, Defendant's secured "individual right" to keep and bear arms, and his right to self-defense, were automatically forfeited, or otherwise disappeared. That is a falsehood. The Constitution of the United States does not in any way authorize the Government to summarily, and at it whim, abrogate or take away a Citizen's secured rights secured by the first 10 Amendments to the Constitution of the United States.

#### II

The Second Amendment provides in part; "the right of the people to keep and bear Arms, shall not be infringed." Second Amendment. The Second Amendment protects "the right to keep and bear Arms." United States v. Verdugo-Urquidez, 494 U.S. 259, 265 (1990). "The Second Amendment declares that it shall not be infringed, this ... means that it shall not be infringed by Congress". United States v. Cruikshank, 92 U.S. 542, 553 (1875).

Bruen finally identifies 1791 as the proper period of laws for this Court to consider unless later laws confirm an earlier tradition.

> final word on historical method: Strictly speaking, New York is bound to respect_ the right to keep and bear arms because of the Fourteenth Amendment, not the Second. See, e.g., Barron ex rel. Tieman v. Mayor of Baltimore, 7 Pet. 243, 250-251, 8 L.Ed. 672 (1833) Barron ex rel. Tieman v. Mayor of Baltimore, 7 Pet. 243, 250-251, 8 L.Ed. 672 (1833) (Bill of Rights applies only to the Federal Government). Nonetheless, we have made clear that individual rights enumerated in the Bill of Rights and made applicable against the States through the

9

Fourteenth Amendment have the same scope as against the Federal Goverment. See, e.g., Ramosv. Louisiana, 590 U.S. —, ——, 140 S.Ct. 1390, 1397, 206 L £d.2d 583 (2020); Timbs v. Indiana, 586 U.S. —, —— = ——, 139 S.Ct. 662, 686-687, 203 L.Ed 2d 11 (2019); Malloyv. Hogan, 378 U.S. 1, 10-11, 84 S.Ct. 1489, 12 LEd.2d 653 (1964). And we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791....

N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 597 at 37 (2022).

III

**Due Process Clauses** of the Fifth and Fourteenth Amendments includes, and protects, both "individual citizens," and her/his "individual right, to keep and bear legal arms." See Albright v. Oliver, 510 U.S. 266, 306-307 (1994); Planned Parenthood v. Casey, 505 U.S. 833, 847-848 (1992); Moore v. East Cleveland, 431 U.S. 494, 502 (1977); Poe v. Ullman, 367 U.S. 497, 541-543 (1961).

The right to keep and bear Arms is completely encompassed within, and is fully protected by the Due Process Clauses of the Constitution of the United States. See Albright, 510 U.S. at 306-307; Casey, 505 U.S. at 847-848; Moore, 431 U.S. at 502; Poe, 367 U.S. at 541-543. No man shall be condemned in his person or property without notice and an opportunity to be heard in his defense is a maxim of universal application, and it affords the rule of decision in this case. Earle v. McVeigh, 91 U.S. 503, 510 (1875).

F.

**THE SECOND AMENDMENT INCLUDES AND PROTECTS DEFENDANT'S RIGHT TO POSSESS A LEGAL FIREARM AND THAT RIGHT HAS NOT BEEN CONSTITUTIONALLY ABROGATED**

I.

The Constitution of the United States, is a law for rulers and people, equally in war and in peace, and covers with the shield of its protections all classes of men, **at all times, and under all circumstances**. No doctrine, involving more pernicious consequence's, was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government. Ex parte Milligan, 71 U.S. 2, 121 (1866). See also Florida v. Bostick, 115 L.ed. 2d 389, 401 (1991); Marbury v. Madison, 5, U.S. 137, 176-180 (1803).

II.

10

The Supreme Court has made clear that *"All Constitutional guarantees extend both to the rich and poor alike, to those with notorious reputation,* as well as to those who are models of upright citizenship. No regime under the rule of law could comport with constitutional standards that drew such distinctions." Smith v. United States, 428 U.S. 1303, 1308 (1975), Ex parte Milligan, 71 U.S. 2, 121 (1866).

The rights enumerated in the first eight Amendments **belong to every Citizen as a member of society.** Poe, 367 U.S. at 540-543; Logan, 144 U.S. at 286-288; Cruikshank, 92 U.S. at 551-554. The Constitutional rights of criminal defendants are granted to the innocent and the guilty alike. Kimmelman v. Morrison, 477 U.S. 365, 380 (1986). The Constitution of the United States includes-encompasses, and protects all Citizens, including felons. See Smith, 428 U.S. at 1308; Milligan, 71 U.S. at 121.

### III.

Under the Constitution of the United States, and Supreme Court binding precedent, American Citizens (Petitioner) do not forfeit constitutional secured rights by reason of a felony conviction; Even while actually imprisoned, they do not forfeit all constitutional rights, only those rights necessary to maintain institution security and discipline. See Bell v. Wolfish, 441 U.S. 520, 545-546 (1979); Wolff v. McDonnell, 418 U.S. 539, 555-556 (1974). There is no iron curtain drawn between the Constitution and the people of this Country. See Wolff at 555-556; Bell, 441 U.S. at 545.

"The constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" McDonald v. City of Chicago, Ill., 561 U.S. 742, 780 (2010); Bruen, 142 S. Ct. at 2156. Expounding on Heller, the Supreme Court held that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Bruen, 142 S. Ct. at 2129–30. That right belongs to all the People; and is protected by the due process clauses of the Fifth and Fourteenth Amendments.

### IV.

11

The Supreme Court in Scott v. Sandford declared: "Citizens have the right to keep and carry arms wherever they went. Nor can Congress deny to the people the right to keep and bear arms." Dred Scott v. Sandford, 60 U.S. 393, 417-420, 450-451(1856).

**For these reasons**, Defendant's Second Amendment pre-existing secured individual right to keep and bear legal arms for lawful self-defense, **does not-and cannot be** Constitutionally forfeited or abrogated by the Government because of a prior conviction. Defendant is one of "the People" shielded by the Second and Fifth Amendments. Petitioner, like any other citizen, **did not-does not** forfeit his secured Second Amendment rights if his conduct ran afoul of a government made law.

**Therefore**, even if the government can conjure up some reason to abrogate a Citizen's secured rights, that Citizen is Constitutionally entitled to a full, in the courtroom, due process hearing, before the government my constitutionally take away his secured "right" to keep and bear arms.

F.

**THE GOVERNMENT BEARS THE BURDEN OF PROVING BEYOND A REASONBLE DOUBT THAT DEFENDANT'S SECURED INDIVIDUAL RIGHT TO KEEP AND BEAR LEGAL ARMS, AND TO DELF-DEFENSE, HAVE BEEN CONSTITUTIONALLY ABROGATED FOR LIFE**

The Government bears the burden of demonstrating that an individual citizen has voluntarily, intelligently and knowingly relinquished his Second and Fifth Amendment secured rights by a preponderance of the evidence. See State v. Doe, 131 Idaho 709, 712, 963 P.2d 392, 395 (Ct. App. 1998) (citing State v. Alger, 115 Idaho 42, 46, 764 P.2d 119, 123 (Ct. App. 1988)). Waivers of constitutional rights not only must be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences. a valid waiver is the "intentional relinquishment or abandonment of a known right or privilege. Brady v. United States, 397 U.S. 742, 748 (1970); see, e.g., Maryland v. Shatzer, 559 U.S. 98, 104 (2010); Edwards v. Arizona, 451 U.S. 477, 483 (1981) (quoting Arizona v. Edwards, 594 P.2d 72, 78 (Ariz. 1979)); see also Edward L. Rubin, Toward a General Theory of Waiver, 28 UCLA L. Rev. 478, 491–93 (1981).

12

It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights." Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393; Hodges v. Easton, 106 U.S. 408,412; Slocum v. New York Life Ins. Co., 228 U.S. 364, 385; Patton v. United States, 281 U.S. 276, , 293 U.S. 474, 486; Foust v. Munson S.S. Line, 299 U.S. 77, 84.

## G.

### Actual innocence

A reading of Defendant's petition will establish that Under the Constitution of the United States, the Government and its judges can not apply the Government's law, 18 U.S.C. § 924(c)(1) against American Citizens like Defendant, when his secured "individual right" to keep and bear arms, **had not** been constitutionally abrogated or forfeited under the Constitution of the United States. Therefore, Defendant is actually innocent.

The Supreme Court held, as many Courts of Appeal and district courts had previously recognized, that actual innocence serves as a gateway to not only procedural bars but also to the expiration of the AEDPA statute of limitations. McQuiggin v. Perkins, 569 U.S. 383, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013).

No reasonable juror would have found Defendant " guilty" of the Government's 18 U.S.C. § 924(c)(1) law, if presented with the facts that Defendant's secured "individual right" to keep and bear arms, **had not been constitutionally abrogated or forfeited** at the time he possessed the firearm. Thus, he has made the necessary showing for actual innocence under Schlup, and is entitled to a hearing on the merits for his claims that there was not a constitutional basis for the conviction.   See . e.g. Schlup v. Delo, 513 U.S. 298 (1995), and  House v. Bell, 547 U.S. 518 (2006); United States v. Davies, 394 F.3d 182 (3d Cir. 2005); United States v. Stewart, 246 F.3d 728, 733 (D.C. Cir. 2001).

## CONCLUSION

13

Defendant's argument is that his secured "individual right" to keep and bear arms for self-defense, has never been abrogated or forfeited within the guaranteed protections of the Second Amendment and the due process clauses of the Fifth and Fourteenth Amendments. Thus, the sentencing judge can-not constitutionally enhanced the drug sentence based on the Government's allegations that Defendant may have possessed a firearm during the drug conspiracy. applied to him. Therefore, his enhanced sentence is unconstitutional.

**FOR THESE ABOVE REASONS**, the Court should:

a. Appoint counsel in this case as the Defendant has no funds for that purpose;

b. Hold an immediate hearing in this case;

c. Find that Defendant's "individual right" to keep and bear arms, and his right to self-defense, **had not** been Constitutionally abrogated or forfeited at the time of the government's prosecution;

d. Find that no clause of the Constitution of the United States or its first ten Amendments clearly declares that the State or Federal government have a constitutional powder to arbitrarily, and or automatically forfeit or abrogate an American Citizen's Second Amendment individual right, or her or his right to self-defense;
e. Find that the federal government may not enhance it's drug sentence based on Defendant may have possessed a firearm during the drug conspiracy, when Defendant's "individual right" to keep and bear arms, and his or her right to self-defense, had not been Constitutionally abrogated or forfeited, prior to the time of the government's sentencing;
f. Order Defendant resentenced excluding the sentence enhancement for the allegation that Defendant may have possessed a firearm during the drug conspiracy;
g. Grant all other relief Defendant may be entitled.

Pursuant to 28, U.S.C. § 1746, "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the above and foregoing is true and correct to the best of my knowledge and belief.

<u>Executed</u> May 19, 2025

Respectfully submitted,

*Michael W. Neeley*

Michael Donnell Neeley
Pro se Defendant
#21934-040
FCI McDowell
P.O. Box 1009
Welch, VA 24801

Michael D. Neeley Sr.
P.O. Box 1009
Welch, VA 24801

Clerk's O
U.S. Dis
410 West
Kalama,



Office
trict Court
Michigan Ave. Office 154
zoo, MI 49007-3757